CONTAINS CONFIDENTIAL INFORMATION – TO BE FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

NML CAPITAL, LTD.,

                          Plaintiff,

          -against-                                08 Civ. 6978 (TPG)

THE REPUBLIC OF ARGENTINA,

                          Defendant.

----------------------------------------------------------------X

NML CAPITAL, LTD.,

                          Plaintiffs,

          -against-                                09 Civ. 1707 (TPG)

THE REPUBLIC OF ARGENTINA,

                          Defendant.

----------------------------------------------------------------X

NML CAPITAL, LTD.,

                          Plaintiff,

          -against-                                09 Civ. 1708 (TPG)

THE REPUBLIC OF ARGENTINA,

                          Defendant.

----------------------------------------------------------------X  *(captions continue on following page)*


**MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND AND SUPPLEMENT THEIR COMPLAINTS**

```
------------------------------------------------------------X
                                                            :
AURELIUS CAPITAL MASTER, LTD. and ACP                       :
MASTER, LTD.,                                               :
                                                            :
                        Plaintiffs,                         :
                                                            :
            -against-                                       :    09 Civ. 8757 (TPG)
                                                            :
THE REPUBLIC OF ARGENTINA,                                  :
                                                            :
                        Defendant.                          :
------------------------------------------------------------X
                                                            :
AURELIUS CAPITAL MASTER, LTD. and ACP                       :
MASTER, LTD.,                                               :
                                                            :
                        Plaintiffs,                         :
                                                            :
            -against-                                       :    09 Civ. 10620 (TPG)
                                                            :
THE REPUBLIC OF ARGENTINA                                   :
                                                            :
                        Defendant.                          :
------------------------------------------------------------X
                                                            :
AURELIUS OPPORTUNITIES FUND II, LLC                         :
and AURELIUS CAPITAL MASTER, LTD.,                          :
                                                            :
                        Plaintiffs,                         :
                                                            :
            -against-                                       :    10 Civ. 1602 (TPG)
                                                            :
THE REPUBLIC OF ARGENTINA,                                  :
                                                            :
                        Defendant.                          :
------------------------------------------------------------X
```

```
-----------------------------------------------------------------X
                                                                 :
AURELIUS OPPORTUNITIES FUND II, LLC                              :
and AURELIUS CAPITAL MASTER, LTD.,                               :
                                                                 :
                              Plaintiffs,                        :
                                                                 :
                    - against -                                 :     10 Civ. 3507 (TPG)
                                                                 :
THE REPUBLIC OF ARGENTINA,                                      :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------X
                                                                 :
AURELIUS CAPITAL MASTER, LTD. and                               :
AURELIUS OPPORTUNITIES FUND II, LLC,                            :
                                                                 :
                              Plaintiffs,                        :
                                                                 :
                    - against -                                 :     10 Civ. 3970 (TPG)
                                                                 :
THE REPUBLIC OF ARGENTINA,                                      :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------X
                                                                 :
BLUE ANGEL CAPITAL I LLC,                                       :
                                                                 :
                              Plaintiff,                         :
                                                                 :
                    - against -                                 :     10 Civ. 4101 (TPG)
                                                                 :
THE REPUBLIC OF ARGENTINA,                                      :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------X
```

```
-----------------------------------------------------------X
                                                           :
BLUE ANGEL CAPITAL I LLC,                                  :
                                                           :
                         Plaintiff,                        :
                                                           :
            - against -                                    :    10 Civ. 4782 (TPG)
                                                           :
THE REPUBLIC OF ARGENTINA,                                 :
                                                           :
                         Defendant.                        :
-----------------------------------------------------------X
                                                           :
AURELIUS CAPITAL MASTER, LTD. and                          :
AURELIUS OPPORTUNITIES FUND II, LLC,                       :
                                                           :
                         Plaintiffs,                       :
                                                           :
            - against -                                    :    10 Civ. 8339 (TPG)
                                                           :
THE REPUBLIC OF ARGENTINA,                                 :
                                                           :
                         Defendant.                        :
-----------------------------------------------------------X
                                                           :
OLIFANT FUND, LTD.,                                        :
                                                           :
                         Plaintiff,                        :
                                                           :
            -against-                                      :    10 Civ. 9587 (TPG)
                                                           :
THE REPUBLIC OF ARGENTINA,                                 :
                                                           :
                         Defendant.                        :
-----------------------------------------------------------X
                                                           :
NML CAPITAL, LTD.                                          :
                                                           :
                         Plaintiffs,                       :
                                                           :
            -against-                                      :    14 Civ. 8988 (TPG)
                                                           :
THE REPUBLIC OF ARGENTINA,                                 :
                                                           :
                         Defendant.                        :
-----------------------------------------------------------X
```

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ................................................................................................................ 3

    A.    The *Pari Passu* Clause Applies Only to External Indebtedness .................................. 3

    B.    The Argentine-Law Governed, Locally-Offered BONAR 24 Bonds Are Not
External Indebtedness ................................................................................................. 8

ARGUMENT ...................................................................................................................... 11

    A.    Plaintiffs' Motions Are Futile Because The Proposed Amendments Fail To
Adequately State A Claim ......................................................................................... 11

    B.    Plaintiffs' Requests Are The Product Of Undue Delay And Bad Faith ..................... 17

CONCLUSION ................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

Fed. R. Civ. P. 15 ................................................................................................ 11, 20

Fed. R. Civ. P. 12(b)(6) ................................................................................. 2, 11, 22

**Cases**

*Alzheimer's Inst. of America v. Elan Corp. PLC,*
274 F.R.D. 272 (N. D. Cal. 2011) .................................................................. 22

*Ascon Prop., Inc. v. Mobil Oil Co.,*
866 F.2d 1149 (9th Cir. 1989) ....................................................................... 17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................................... 12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................................... 12

*Bracci v. Becker,*
No. 11 Civ. 1473 (MAD) (RFT), 2013 WL 123810 (N.D.N.Y. Jan. 9, 2013),
*aff'd,* 568 F. App'x 13 (2d Cir. 2014) ........................................................... 11

*Calderón-Serra v. Wilmington Trust Co.,*
715 F.3d 14 (1st Cir. 2013) ............................................................................ 17

*CL-Alexanders Laing & Cruickshank v. Goldfeld,*
739 F. Supp. 158 (S.D.N.Y. 1990) ................................................................ 18

*Cnty. of Washington v. Counties of Warren & Washington Indus. Dev. Agency,*
2 F. App'x 71 (2d Cir. 2001) .......................................................................... 11

*Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp),*
752 F.2d 1334 (9th Cir. 1984) ....................................................................... 20

*Cresswell v. Sullivan & Cromwell,*
922 F.2d 60 (2d Cir. 1990) ....................................................................... 17, 18

*Dow Jones & Co. v. Int'l Sec. Exch., Inc.,*
451 F.3d 295 (2d Cir. 2006) .......................................................................... 12

*Evans v. Syracuse City Sch. Dist.,*
704 F.2d 44 (2d Cir. 1983) ............................................................................ 18

*Flaherty v. Lang*,
199 F.3d 607 (2d Cir. 1999) ........................................................................... 11

*Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y Steakhouse of Tampa, Inc.*,
No. 11 Civ. 1456 (THK), 2011 WL 6034481 (S.D.N.Y. Dec. 5, 2011) ........................ 21

*Golden v. Zwickler*,
394 U.S. 103 (1969) ..................................................................................... 14

*Intellivision v. Microsoft Corp.*,
484 F. App'x 616 (2d Cir. 2012) ...................................................................... 13

*Kanyi v. United States*,
No. 99 Civ. 5851 (ILG), 2002 WL 1471648 (E.D.N.Y. May 3, 2002) ......................... 18

*Kolb v. ACRA Control, Ltd.*,
21 F. Supp. 3d 515 (D. Md. 2014) .................................................................... 14

*Lewis v. Robinson (In re Am. Express Co. S'holder Litig.)*,
39 F.3d 395 (2d Cir. 1994) ............................................................................. 12

*Netherby Ltd. v. Jones Apparel Grp., Inc.*,
No. 04 Civ. 7028 (GEL), 2007 WL 1041648 (S.D.N.Y. Apr. 5, 2007) ........................ 14

*NML Capital Ltd. v. Republic of Argentina*,
No. 02 Civ. 3804 (TPG), 2005 WL 743086 (S.D.N.Y. Mar. 31, 2005),
*aff'd sub nom.*, *EM Ltd. v. Republic of Argentina*, 131 F. App'x 745 (2d Cir. 2005) ....... 5

*NML Capital Ltd. v. Republic of Argentina*,
No. 08 Civ. 6978 (TPG), 2015 WL 1087488 (S.D.N.Y Mar. 12, 2015) ........................ 10

*NML Capital Ltd. v. Republic of Argentina*,
No. 08 Civ. 06978 (TPG), 2011 WL 9522565 (S.D.N.Y. Dec. 7, 2011) ........................ 6

*NML Capital Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012) ("*NML I*") .................................................... 6, 13, 19

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013) ("*NML II*") .............................................................. 7

*Oneida Indian Nation of N.Y. State v. Cnty. of Oneida, N.Y.*,
199 F.R.D. 61 (N.D.N.Y. 2000) ........................................................................ 20

*Priestley v. Am. Airlines, Inc.*,
No. 89 Civ. 8265 (JMC), 1991 WL 64459 (S.D.N.Y. Apr. 12, 1991) .......................... 17

*Riccardo v. Cassidy*,
No. 10 Civ. 462 (NAM), 2012 WL 651853 (N.D.N.Y. Feb. 28, 2012) ......................... 14

*Ross Stores, Inc. v. Lincks*,
No. 13 Civ. 1876 (SAS), 2013 WL 5629646 (S.D.N.Y. Oct. 4., 2013) .......................... 11-12

*Scala v. Sequor Grp.*,
No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995) .......................... 11

*Sims v. Electrolux Home Prods., Inc.*,
No. 13 Civ. 0625 (GTS) (DEP), 2014 WL 4828151 (N.D.N.Y. Sept. 29, 2014) .............. 22

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
921 F.2d 409 (2d Cir. 1990) ........................................................................... 18

*Tampa Bay Water v. HDR Eng'g, Inc.*,
731 F.3d 1171 (11th Cir. 2013) ...................................................................... 17

*Themis Capital, LLC v. Democratic Republic of Congo*,
881 F. Supp. 2d 508 (S.D.N.Y. 2012) .............................................................. 16

*U.S. Bank, Nat'l Ass'n v. Citigroup Global Markets Realty Corp.*,
No. 13 Civ. 6989 (GBD), 2015 WL 1222075 (S.D.N.Y Mar. 13, 2015) .................... 11

*Vecchione v. Dep't of Educ. of NYC*,
No. 10 Civ. 6750 (GBD), 2012 WL 1075831 (S.D.N.Y. Mar. 28, 2012) .................... 10

*Yaba v. Cadwalader, Wickersham & Taft*,
931 F. Supp. 271 (S.D.N.Y. 1996) .................................................................. 22

*Young v. U.S. Dep't of Justice*,
882 F.2d 633 (2d Cir. 1989) ...................................................................... 13, 19

**Other Authorities**

Mark Weidemaier, et al. *Origin Myths, Contracts, and the Hunt for* Pari Passu,
38 Law & Soc. Inquiry 72 (2013) .................................................................... 4

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in opposition to plaintiffs' motions for leave to amend and supplement their complaints in the above-captioned actions, filed on May 11 and May 12, 2015.[1]

## PRELIMINARY STATEMENT

Plaintiffs have already succeeded in transforming the *pari passu* clause from a boilerplate provision into an unprecedented weapon of mass destruction wielded to harm the Republic, financial intermediaries, and bondholders worldwide.  The plaintiffs are not content with the harm they have already caused in connection with their injunctions interfering with over $28 billion of the Republic's restructured debt and $8.4 billion of Argentine law-governed bonds.  Plaintiffs now seek to "amend and supplement" their existing complaints to add two new counts that seek declarations that the Republic also violates the *pari passu* clause when it services certain Argentine law-governed, locally offered debt due in 2024 known as the Bonos de la República Argentina (the "BONAR 24's"), which is expressly excluded from the scope of the provision, and when it services *any* of its as yet unidentified External Indebtedness in addition to the Exchange Bonds already covered by the injunctions.

Plaintiffs' motions should be denied.  Not only are the proposed new claims futile, including because they fail to state a claim, but their belated assertion by plaintiffs is the type of bad faith, dilatory conduct that forecloses their requested relief.

*First*, the motions should be denied on futility grounds because plaintiffs plead no legally relevant facts to support the claim that the locally offered BONAR 24's are External Indebtedness, which is the only type of Republic debt that is subject to the *pari passu* clause.  As

---

[1] The memoranda of law submitted by plaintiffs in support of their motions are identical in substance.  Citations to "Pls. Br." here refer to the Aurelius plaintiffs' brief, but the Republic's arguments apply equally to all plaintiffs.

plaintiffs do not contest, the BONAR 24's were offered exclusively in Argentina and so are not External Indebtedness. Plaintiffs' various attempts to distort these facts, which are fatal to their claims, by alleging that those initial purchasers then sold the BONAR 24's to buyers outside Argentina, all fail because plaintiffs' assertions are insufficient as a matter of law to attribute the actions of those remote secondary market purchasers to Argentina.

Plaintiffs further reveal the fallacy of their position when they otherwise seek to add the claim that the Republic violates the *pari passu* provision when it services *any* of its present and future External Indebtedness – a claim so speculative and overbroad that it fails to even present a case or controversy, let alone state a claim under Rule 12(b)(6). The basis of that assertion is in any event wrong. As plaintiffs have already conceded, one category of External Indebtedness – *i.e.*, amounts owed to multilaterals, such as the IMF – is not covered by the *pari passu* clause because the market purportedly understands that those are preferred creditors. Principles of judicial estoppel thus bar plaintiffs from now seeking the contrary declaration they do here that is based on a different reading of the *pari passu* clause, which would *not* exclude that category of External Indebtedness, and which plaintiffs would likely use to sweep such debt within the scope of any injunctive relief they subsequently seek. Indeed, that is the type of confusion for which plaintiffs are plainly hoping in asking for leave to make these additional claims, as plaintiffs are quite clear that the present motions have nothing to do with vindicating any actual legal right, but are driven entirely by their view that broader injunctions that block even more debt payments will force the Republic to settle with them.

*Second*, plaintiffs' admitted delay and their bad faith object of using the proposed amendments for a perceived tactical advantage further require denial of the motions. In the years of litigation that led up to the injunctions now in place, plaintiffs – in urging the courts to adopt

their novel reading of the *pari passu* clause and their unprecedented and destructive "remedy" –
repeatedly and explicitly tried to characterize their demands as somehow reasonable.  This meant
claiming that their theory was "limited" to Exchange Bonds, the holders of which plaintiffs
asserted had assumed the risk of *pari passu* injunctions by participating in the Republic's debt
restructuring when plaintiffs refused to do so.  But now, plaintiffs make clear that the limitation
was in fact no limitation at all, and they seek an overbroad and improper reading of the clause for
no other reason than because they see it as increasing their purported leverage over the Republic.
The time for plaintiffs to have brought these otherwise improper requests was over four years
ago, in connection with their original *pari passu* claims.  Their failure to do so for strategic
reasons, to the prejudice of the Republic, mandates the motions' rejection.

## BACKGROUND

**A.      The *Pari Passu* Clause Applies Only to External Indebtedness**

The October 19, 1994 Fiscal Agency Agreement ("1994 FAA") governing the
series of bonds in which plaintiffs hold (or purport to hold) interests contains a standard clause
found in sovereign (and non-sovereign) indebtedness known as the *pari passu* clause.  *See* 1994
FAA ¶ 1(c) (Ex. A).[2]  That provision states:

> The Securities [issued under the 1994 FAA] will constitute . . . direct,
> unconditional, unsecured and unsubordinated obligations of the Republic
> and shall at all times rank *pari passu* and without any preference among
> themselves.  The payment obligations of the Republic under the Securities
> shall at all times rank at least equally with all its other present and future
> unsecured and unsubordinated External Indebtedness (as defined in this
> Agreement).

---

[2] All referenced exhibits are attached to the Declaration of Elizabeth M. Hanly, dated May 29,
2015.

*Id.*  The 1994 FAA in turn defines External Indebtedness to expressly exclude Domestic Foreign

Currency Indebtedness ("DFCI"), *id.* at 16, which includes any foreign currency-denominated

(*e.g.*, dollar-denominated) debt "offered exclusively" by the Republic in Argentina, *id.* at 17.

        The *pari passu* clause is a boilerplate provision that appears in virtually all

modern sovereign bonds, often with language that is materially identical to that here.  Mark

Weidemaier, et al. *Origin Myths, Contracts, and the Hunt for* Pari Passu, 38 Law & Soc. Inquiry

72, 84, 101-02 (2013).  The first sentence of the clause prohibits the Republic from

discriminating "among" the bonds issued pursuant to the 1994 FAA ("1994 FAA Bonds")

"themselves" and is not at issue in these proceedings.  Corrected Joint Resp. Br. of Pls.-

Appellees, NML Capital, Ltd., Olifant Fund, Ltd., and Varela, et al. at 8, *NML Capital, Ltd. v.

Republic of Argentina*, No. 12-105 (L) (2d Cir. Apr. 23, 2012), ECF No. 308.  Financial markets

have most commonly understood the second sentence "to protect a lender against the risk of

legal subordination in favor of another creditor," such as by creating unsecured debt ranking

senior in legal right of payment.  Br. of the United States as *Amicus Curiae* in Supp. of Reversal

at 11, *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105 (L) (2d Cir. Apr. 4, 2012), ECF

No. 238 ("U.S. Br.") (quoting Lee C. Buchheit & Jeremiah S. Pam, *The* Pari Passu *Clause in

Sovereign Debt Instruments*, 53 Emory L.J. 869, 870 (2004)).  And markets have

overwhelmingly agreed on what it does *not* mean:  "a borrower does not violate the *pari passu*

clause by electing as a matter of practice to pay certain indebtedness in preference to the

obligations outstanding under the agreement in which this clause appears."  *Id.* at 12 (quoting

Lee C. Buchheit & Ralph Reisner, *The Effect of the Sovereign Debt Restructuring Process on

Inter-Creditor Relationships*, 1988 U. Ill. L. Rev. 493, 497 (1988); *see also* Br. of the United

States as *Amicus Curiae* in Supp. of the Republic of Argentina's Pet. for Panel Reh'g and Reh'g

*En Banc*, *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105 (L) (2d Cir. Dec. 28, 2012), ECF No. 653 ("U.S. En Banc Br.").

Despite the fact that the *pari passu* provision has been at issue "[f]rom the earliest stages of this litigation," Mem. of Law in Support of the Mot. by NML Capital, Ltd. for Partial Summ. J. at 31 n.8, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (TPG) (S.D.N.Y. Feb. 3, 2015), ECF No. 7 ("NML Me Too Br."), plaintiffs did not seek *pari passu* relief until many years later, when, on October 20, 2010, NML, banking on the Court's unhappiness with its unpaid judgments (which was the necessary consequence of NML's refusal to participate in the Republic's debt restructuring – a debt restructuring that could not have succeeded if the Republic had offered to pay these judgments) moved for summary judgment and a "ratable payment" injunction based on its incorrect reading of the *pari passu* clause. *See* Mem. of Law in Supp. of the Mot. by NML Capital, Ltd. For Partial Summ. J. and for Injunctive Relief Pursuant to the Equal Treatment Provision at 14-16, *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 06978 (TPG) (S.D.N.Y. Oct. 20, 2010), ECF No. 230.  By that time:

- The Republic in 2005 had completed its global, voluntary exchange offer of new, performing bonds for approximately 76% of its non-performing debt, or approximately $62.5 billion in principal amount, making it the largest sovereign debt restructuring in history at that time (the "2005 Exchange Offer").  *See* Republic of Argentina, Registration Statement, Amend. No. 1, at 4 (Jan. 28, 2010) (the "Registration Statement").  The new debt was issued to participants in the 2005 Exchange Offer at a discount to the face value of the defaulted debt.

- NML had unsuccessfully attempted to disrupt the 2005 Exchange Offer, without raising the *pari passu* issue.  *See NML Capital Ltd. v. Republic of Argentina*, No. 02 Civ. 3804 (TPG), 2005 WL 743086 (S.D.N.Y. Mar. 31, 2005), *aff'd sub nom.*, *EM Ltd. v. Republic of Argentina*, 131 F. App'x 745, 747 (2d Cir. 2005).

- The Republic for over five years (since June 2005 when the 2005 Exchange Offer closed) had paid regular interest payments to those bondholders who

accepted the new performing debt as part of the 2005 Exchange Offer. *See* Registration Statement at 4.

- The Republic had re-opened its 2005 Exchange Offer in 2010 (the "2010 Exchange Offer") to holders of eligible securities who had not tendered in 2005, resulting in owners of approximately $12.8 billion of old debt tendering into the offer and receiving new debt at approximately the same discounted value that participants in the 2005 Exchange Offer had received. *See* Republic of Argentina, Annual Report (Form 18-K) (Oct. 1, 2010) at 17. With the consummation of the 2010 Exchange Offer, the Republic successfully restructured approximately 92% of its defaulted debt. *See id.*

After a hearing on September 28, 2011, the Court held on December 7, 2011 that the Republic had breached the *pari passu* clause, *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 06978 (TPG), 2011 WL 9522565, at *2 (S.D.N.Y. Dec. 7, 2011), and, after NML renewed its motion for injunctive relief, the Court entered injunctions on the terms requested by NML (the "Injunctions"). *See, e.g.*, Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 23, 2012). The Court accepted NML's arguments that the Republic had breached the *pari passu* clause when it enacted certain national legislation (the so-called Lock Law) in conjunction with and to facilitate its Exchange Offers, and when it made payments of interest to the Exchange Bondholders without paying NML full principal and interest on its defaulted debt. *See id.*

The Second Circuit in October 2012 affirmed the Court's finding that the Republic had breached the *pari passu* clause. *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 260 (2d Cir. 2012) ("*NML I*"). The Court of Appeals stated that the Republic had breached the second sentence of the clause through, *inter alia*, making interest payments on the Exchange Bonds without making payments on the 1994 FAA Bonds. *Id.* at 259-60. It also accepted NML's representation that the Injunctions would not "in any way affect . . . obligations to multilaterals" because it would only require the Republic "to satisfy its obligations to [the holdouts] to the same extent it satisfies its obligations under the Exchange Bonds." Joint Resp.

Br. of Pls.-Appellees NML Capital, Ltd., Olifant Fund, Ltd., and Varela, et al., *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105 (L) (2d Cir. Apr. 17, 2012), at 4-5 ("April 17 NML Br.").

Following a remand, in which the Court on November 21, 2012 entered amended injunctions clarifying that the amount that the Republic must pay when it services its restructured debt is 100% of the principal, contractual interest, and statutory interest outstanding on the holdouts' bonds (the "Amended Injunctions"), the Second Circuit affirmed again. *See* Amended February 23, 2012 Order ¶ 2, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Nov. 21, 2012); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013) ("*NML II*"). Two days after the Supreme Court denied the Republic's petition for *certiorari*, the Second Circuit on June 18, 2014 lifted its stay, and the Amended Injunctions went into effect.[3]

Both the Injunctions and the Amended Injunctions targeted payments made by the Republic under the so-called Exchange Bonds. And the Court has since made clear that the Amended Injunctions apply "only to the 1994 bonds and the bonds that were issued in exchange for those bonds in 2005, 2010." Hr'g Tr. 48:8-9, 11-13, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (S.D.N.Y. Sept. 26, 2014), ECF No. 694. Until now, no plaintiff had argued that injunctive relief should extend beyond the scope of the Exchange Bonds. To the contrary, to persuade the Second Circuit to affirm the *pari passu* relief they sought, plaintiffs

---

[3] As the Republic had warned would happen on multiple occasions, following the date on which the Amended Injunctions went into effect, 526 "me too" plaintiffs brought 37 motions for partial summary judgment against the Republic that, like NML's October 2010 motion, seek a declaration that the Republic has breached the *pari passu* clause in the 1994 FAA. *See* Mem. of Law of the Republic of Argentina in Opp'n to Mots. by 526 Pls. in 37 Actions Seeking Partial Summ. J. at 11, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (S.D.N.Y. Mar. 17, 2015), ECF. No. 15 ("Me Too Opp'n"). Those motions are currently pending before this Court.

offered their repeated assurance that they were *not* pursuing such relief.  *See* April 17 NML Br.

at 4.

**B.      The Argentine-Law Governed, Locally-Offered BONAR 24 Bonds Are Not External
         Indebtedness**

Since the entry of the Injunctions, the Republic has issued BONAR 24's, which

fall outside the scope of the *pari passu* clause because they were "offered exclusively" in

Argentina and thus constitute DFCI.  The BONAR 24's were first issued to Spanish oil company

Repsol, S.A. ("Repsol") as partial consideration for the resolution of claims asserted by Repsol

against the Republic.  *See* Resolution 26/2014, dated Apr. 30, 2014 (Ex. C).  The parties'

negotiations took place in Argentina, and their agreement was negotiated, signed and closed in

Argentina.  *See* Repsol Settlement Agreement at 5, 20, 36, 107, dated Feb. 27, 2014.  The bonds

were offered to Repsol pursuant to the direct placement provisions of an authorizing resolution,

published in the Official Gazette of the Republic of Argentina and posted on the Ministry of

Economy website, in both cases exclusively in Spanish.  *See* Resolution 26/2014, dated Apr. 30,

2014 (Ex. C).

The BONAR 24 issuance was then reopened by the Republic on two occasions:

once in December 2014 and again in April 2015.  Both reopenings were announced exclusively

by means of Spanish-language press releases issued in Argentina.  No efforts to offer the

BONAR 24's were undertaken by the Republic other than these domestic, Spanish-language

press releases.  *See* Press Release, Republic of Argentina, Announcement of the Cancellation of

the Purchase of BODEN 2015 (Dec. 4, 2014), *available at* http://www.mecon.gov.ar/anuncio-de-

la-cancelacion-anticipada-mediante-la-compra-de-boden-2015/?utm_source=rss&utm_medium=

rss&utm_campaign=anuncio-de-la-cancelacion-anticipada-mediante-la-compra-de-boden-2015

("Dec. 4 Press Release"); Press Release, Republic of Argentina, Invitation to bid for USD-

denominated BONAR  8.75% 2024s (Apr. 20, 2015) ("Apr. 20 Press Release"), *available at* http://www.mecon.gob.ar/llamado-a-licitacion-de-bonos-de-la-nacion-argentina-en-dolares-estadounidenses-875-2024-bonar-2024/.  In both reopenings, participation could only take place through the *Mercado Abierto Electrónico* of the Buenos Aires Stock Exchange.  Participation in the auctions was limited to clearing and settlement agents, broker-dealers, or other agents registered with the Comisión Nacional de Valores ("CNV") (the Argentine equivalent of the U.S. Securities and Exchange Commission) through accounts at Central de Registro y Liquidación de Pasivos Públicos y Fideicomisos Financieros ("CRYL") (an Argentine depositary located in Buenos Aires).

Every aspect of the offerings of the BONAR 24's was thus strictly domestic: their initial issuance was pursuant to a bilateral agreement that was negotiated and entered into entirely within Argentina,[4] and the two subsequent issuances were publicized only by Spanish-language press releases issued and circulated domestically within Argentina. Transactions of this nature are used routinely by the Republic to issue debt domestically and, in fact, are prototypical examples of what market participants consider to be a purely local offering by a sovereign.[5]

---

[4] This Court has previously recognized that other bonds placed with Repsol to satisfy the Republic's obligations under the terms of its agreement with Repsol should be paid and are not the proper subject of plaintiffs' injunctions.  *See* Order at 2, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (S.D.N.Y. July 28, 2014).

[5] *See, e.g.*, Dominican Republic Ministry of Finance, Dominican Republic's Quarterly Public Debt Report: July – September 2009 (2009), *available at* http://www.creditopublico.gov.do/ingles/publications/Public% 20Debt%20Report_3Q09.pdf (listing, among others, Ministry of Finance bonds issued to the local market via auction); Kingdom of Morocco Ministry of Economics and Finance, *Frequently Asked Questions*, http://www.finances.gov.ma/en/Pages/Institutional%20Investors/ FAQ.aspx?m=Institutional%20Investors (describing auction process for domestic debt); OECD, *Public Debt Markets: Trends and Recent Structural Changes*, 231 (2002), *available at*

Furthermore, unlike the Argentine law-governed bonds that were the subject of the Court's March 12, 2015 Order, the majority of which the Court found not to be DFCI due to references to a "global offering" in related prospectuses, the BONAR 24's were not issued in connection with any prospectus at all, let alone a prospectus mentioning a global offer.  *See NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), 2015 WL 1087488, at *4 (S.D.N.Y. Mar. 12, 2015) (where offering documentation stated that the offering was global, bonds were not "offered exclusively within the Republic of Argentina").  The March 12 Order accordingly further supports the conclusion that the BONAR 24's are *not* External Indebtedness, but rather are DFCI.

Notwithstanding the clear domestic nature of these offerings, the Aurelius plaintiffs in an April 22, 2015 press release threatened to bring suit against any participants in the April 2015 offering on the blatantly incorrect basis that those bonds were subject to the *pari passu* clause.  *See* Press Release, Aurelius Capital Management, LP, Public Notice to (A) Participants in Argentina's Offering of BONAR 2024s and (B) Subsequent Purchasers of Those Bonds (Apr. 22, 2015) ("Aurelius Apr. 22 Press Release").[6]  The press release further sought to harass those participants by purporting to subject them to document retention requirements.  *Id.*

---

http://tinyurl.com/pjdortl (Turkish debt issuances considered domestic where initial sales were limited to residents and institutions that reside in Turkey); *Lithuania Holds Biggest Domestic Debt Auction for Seven Years*, Bloomberg Business (Feb. 18, 2013 10:12 AM), http://www.bloomberg.com/news/articles/2013-02-18/lithuania-holds-biggest-domestic-debt-auction-for-seven-years (describing Lithuania's domestic debt auction process).

[6] "In deciding a motion to amend, the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of and relied on when bringing suit, or matters of which judicial notice may be taken." *Vecchione v. Dep't of Educ. of NYC*, No. 10 Civ. 6750 (GBD), 2012 WL 1075831, at *2 (S.D.N.Y. Mar. 28, 2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

# ARGUMENT

## PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND AND SUPPLEMENT THEIR COMPLAINTS SHOULD BE DENIED

A district court may not grant leave to amend or supplement a complaint unless justice so requires. Fed. R. Civ. P. 15(a); *see also* Fed. R. Civ. P. 15(d) (court may only grant motion to supplement "on just terms"). The Second Circuit has thus directed that such motions "should be denied if there is an 'apparent or declared reason – such as undue delay, bad faith . . . [or] futility of the amendment.'" *Cnty. of Washington v. Counties of Warren & Washington Indus. Dev. Agency*, 2 F. App'x 71, 74-75 (2d Cir. 2001) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).[7] Because each of these factors is present here, the Court should reject plaintiffs' motions.

### A. Plaintiffs' Motions Are Futile Because The Proposed Amendments Fail To Adequately State A Claim

Plaintiffs' motions should be denied on futility grounds because their proposed new claims "would be subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Scala v. Sequor Grp.*, No. 94 Civ. 0449 (LAP), 1995 WL 225625, at *5 (S.D.N.Y. Apr. 14, 1995); *U.S. Bank, Nat'l Ass'n v. Citigroup Global Markets Realty Corp.*, No. 13 Civ. 6989 (GBD), 2015 WL 1222075, at *1 (S.D.N.Y Mar. 13, 2015). That rule requires the dismissal of claims for which – as here – no relief can be granted under the facts alleged. Fed. R. Civ. P. 12(b)(6); *see also Ross Stores, Inc. v. Lincks*, No. 13 Civ. 1876 (SAS), 2013 WL

---

[7] Apart from an additional threshold inquiry into whether the alleged supplemented facts are connected to the original pleading, a motion to supplement is governed by the same legal standard as a motion to amend. *See Bracci v. Becker*, No. 11 Civ. 1473 (MAD) (RFT), 2013 WL 123810, at *26 (N.D.N.Y. Jan. 9, 2013), *aff'd*, 568 F. App'x 13 (2d Cir. 2014); *see also Flaherty v. Lang*, 199 F.3d 607, 613 n.3 (2d Cir. 1999) (Rule 15(a) "allow[s] a party to replead or to add facts or claims that [arose] either prior to or contemporaneous with the allegations stated in the original complaint" whereas Rule 15(d) allows a party to plead events that have transpired since the date of the original pleading) (internal citation omitted).

5629646, at *3 (S.D.N.Y. Oct. 4., 2013) (leave to amend denied on grounds of futility for contract claim because clear from contractual language that claim was without merit and additional evidence not relevant).

Under the strict standard set forth in Supreme Court precedent, complaints must plead facts that "raise a right to relief above the speculative level" and cannot simply conclusorily state the bare elements of a legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (pleadings that "are no more than conclusions[] are not entitled to the assumption of truth"). Absent such relevant, well-pleaded facts, asserted claims are inadequate as a matter of law under the Federal Rules and their dismissal is required. *See Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307-08 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal citations omitted); *Lewis v. Robinson (In re Am. Express Co. S'holder Litig.)*, 39 F.3d 395, 400 n.3 (2d Cir. 1994) (conclusory allegations "need not be accepted as true for the purposes of ruling on a motion to dismiss"). Plaintiffs' proposed new *pari passu* claims concerning all Republic External Indebtedness  and the BONAR 24's cannot stand under this framework.

*First*, plaintiffs' attempt to add general and conclusory *pari passu* claims for declaratory and injunctive relief regarding *all* of "Argentina's other existing and future External Indebtedness," *see, e.g.*, D. Rapport Decl. Ex. 1 ¶ 1 ("Pls. Ex. 1"), fails as a matter law. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (plaintiff's obligation to provide "grounds" of his "entitle[ment] to relief" requires more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do"). As an initial matter, plaintiffs are judicially estopped from bringing such claims in the first instance. In persuading the Second

Circuit to affirm the Injunctions, plaintiffs took the *opposite* position – that the *pari passu* clause does *not* apply to all External Indebtedness, because it does not apply to, *inter alia*, any debt issued to multilateral institutions, such as the IMF.  *NML I*, 699 F.3d at 260 ("[Plaintiffs] contend that 'a sovereign's de jure or de facto policy [of subordinating] obligations to commercial unsecured creditors beneath obligations to multilateral institutions like the IMF would not violate the Equal Treatment Provision for the simple reason that commercial creditors never were nor could be on equal footing with the multilateral organizations.'" (quoting Appellees' (NML et al.'s) Br. at 40)).  Because the parties and courts both relied on plaintiffs' limited reading of the *pari passu* clause in the prior proceedings, plaintiffs are legally precluded from now contradicting their prior position and seeking relief under an entirely new reading of the provision.  *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (judicial estoppel applies where "(1) [] a party's new position is 'clearly inconsistent' with its earlier position, (2) [] the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) [] the party 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2008))); *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989) (noting that the "key ingredient" in determining if judicial estoppel should apply is reliance).

Regardless, even if plaintiffs were not judicially estopped from raising such claims, their requested amendments would still founder due to futility.  While plaintiffs broadly assert that "the Republic has [and will] issue[] other External Indebtedness," and that they seek "specific enforcement of the Equal Treatment Provision with respect to all External Indebtedness," Pls. Ex. 1 ¶ 13, they identify *no* specific Republic debt associated with their claim, allege *no* facts supporting that a breach of the *pari passu* clause has occurred under any

13

theory, and set forth *no* purported facts supporting equitable relief. *See, e.g., id.* ¶ 63 (vaguely alleging that "[u]pon information and belief, Argentina intends to issue additional External Indebtedness in the future"); *id.* ¶ 1 (asking Court to "preliminarily and permanently enjoin[] the Republic from making payments and/or principal on existing and future . . . External Indebtedness unless a 'Ratable Payment' is made [on plaintiffs' bonds]").  It is therefore not even apparent from the face of plaintiffs' amendments – which simply recite the language of the FAA – what exact relief plaintiffs seek or what relief the Court could grant.  Their proposed claims are therefore not only plainly inadequate under the Federal Rules, but also under Article III's case and controversy requirement, because they have not even identified a dispute "of sufficient immediacy" for the Court to adjudicate. *See Riccardo v. Cassidy*, No. 10 Civ. 462 (NAM), 2012 WL 651853, at *1 (N.D.N.Y. Feb. 28, 2012) (motion to amend denied for futility where plaintiff's proposed claims were "conclusory"); *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515, 524 (D. Md. 2014) (motion to amend denied for futility because a "conclusory legal assertion [] is not sufficient to state a claim for breach of contract under *Iqbal*"); *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (claim that does not identify dispute "of sufficient immediacy" seeks improper advisory opinion); *see also Netherby Ltd. v. Jones Apparel Grp., Inc.*, No. 04 Civ. 7028 (GEL), 2007 WL 1041648, at *11 (S.D.N.Y. Apr. 5, 2007) ("declin[ing] to issue a declaratory judgment as to the legal status of hypothetical future actions of the parties," specifically, whether certain future actions of the defendant might constitute a breach of the parties' trademark licensing agreement).

> *Second*, plaintiffs' proposed *pari passu* claims targeting the BONAR 24's are similarly legally inadequate because it is clear from the existing record that the BONAR 24's are in fact DFCI, which, as noted above and as the Court has previously recognized, is expressly

excluded from the scope of the *pari passu* clause.  *See* 1994 FAA at 16 (Ex. A) ("no Domestic Foreign Currency Indebtedness . . . shall constitute External Indebtedness"); March 12 Order at *4 (bonds denominated in a foreign currency are not External Indebtedness if they fall within the "carve-out" for DFCI).  Specifically, the BONAR 24's, which are U.S. Dollar-denominated and were locally issued, constitute DFCI because they are debt payable in a foreign currency "which [was] . . . offered exclusively within the Republic of Argentina."  *See* FAA at 17 (Ex. A); *supra* 8-9 (the initial issuance of BONAR 24's was pursuant to a bilateral agreement negotiated and entered into entirely within Argentina; the two subsequent issuances were publicized only by Spanish-language press releases issued and circulated domestically within Argentina).

      The facts that plaintiffs allege – even if assumed to be true – do not establish that the BONAR 24's are External Indebtedness.  Plaintiffs allege only that some portion of the BONAR 24's were purchased by investors outside Argentina *after* they were offered and sold in Argentina, *see* Pls. Ex. 1 ¶¶ 51, 53, 55, 57, 59, 60.  For example, plaintiffs state that following the Republic's initial domestic placement of BONAR 24's with Repsol, the bonds "have been actively traded in the over-the-counter market in the United States."  *Id.* ¶ 51.  Plaintiffs similarly allege that "Deutsche Bank AG, London Branch . . . eventually sold over $1 billion of the BONAR 2024 Bonds to investors."  *Id.* ¶ 57; *see also id.* ¶ 59 ███████████████████████████████████████████████████████████████ ; ¶ 60 ███████████████████████████████████████████████████████████████ .  But those purported facts about the subsequent resales of the BONAR 24's by the initial purchasers in Argentina are legally irrelevant to the question of where the Republic *offered* the bonds.  The definition of DFCI says nothing about where

Republic debt is traded in the secondary market; it is tied only to the location of a debt's offering.[8]

Acknowledging that this transaction structure defeats their claims, plaintiffs ask the Court to disregard it, by conclusorily alleging that the Republic purportedly tried to "create a false appearance" that the BONAR 24's were offered exclusively within Argentina. *Id.* ¶ 58; *see also id.* ¶ 51 ("Argentina structured the offers to facilitate the issuance of the BONAR 24's to Repsol and other international investors."); *id.* ¶ 60 ("Argentina targeted international investors and took regulatory steps to encourage their participation.  For example, Argentina enacted regulatory changes which made it easier for foreign purchasers to receive their bonds.").  But plaintiffs do not – because they cannot – plausibly allege that the Republic had any control over what the third parties who initially purchased BONAR 24's in Argentina did with their bonds after their single, domestic transaction with the Republic was complete.  Plaintiffs plead no facts supporting the conclusion that subsequent sales of BONAR 24's to third parties can be imputed to the Republic.  *See Themis Capital, LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508, 520 (S.D.N.Y. 2012) ("[t]he existence of actual authority depends upon the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship") (internal citation omitted).[9]

---

[8] That the Buenos Aires Securities Market, "Merval" may have "issued a notice to its agents that they could 'use transfers to Merval's account [in] NY as a means of payment' for the BONAR 2024s," Pls. Ex. 1 ¶ 60, or that the terms of the BONAR 24's include Euroclear as one of the clearing options, *id.* ¶ 51, is also irrelevant.  Merval is a private entity that is not controlled by the Republic.  And the eligibility of bonds to clear through Euroclear speaks only to the options available to investors who wish to trade the bonds on the secondary market, not to the location of where the bonds were initially offered.

[9] Purported public statements made by Argentine political officials after the transactions were consummated that referred to "international markets" plainly do not override the legal principles that make clear that the BONAR 24's were offered exclusively in Argentina.  Pls. Ex. 1 ¶ 60.

**B.      Plaintiffs' Requests Are The Product Of Undue Delay And Bad Faith**

Plaintiffs' undue delay in bringing their motions and the bad faith nature of their requests compound the futility deficiencies and further warrant denial of their proposed amendments.

As the Second Circuit has instructed, justice supports the denial of a motion to amend a complaint where a plaintiff's unexplained delay in seeking such relief results in prejudice to the defendant.  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (denial warranted "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant"); *Priestley v. Am. Airlines, Inc.*, No. 89 Civ. 8265 (JMC), 1991 WL 64459, at *1 (S.D.N.Y. Apr. 12, 1991) (denial warranted "where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading").  Other courts of appeal are in agreement with this uniform principle, and have similarly held that delay alone may foreclose amendment.  *Calderón-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend."); *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) ("A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings."); *Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (same).

_____

██████████████████████████████████████████  *Id.* ¶ 52.  The FAA does not state that, prior to a DFCI issuance, the upcoming domestic offering must be kept a secret outside Argentina.  Rather, it requires only that the offering itself take place in Argentina – which plainly occurred here, as the December 2014 offering was effectuated only through Spanish language press releases that were issued and circulated domestically within Argentina.  *See supra*  3-4, 8-9.

Denial of a belated motion to amend is even more appropriate where the delay in seeking amendment stems from tactical reasons, rather than a lack of factual knowledge. *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (denying leave to amend and noting that plaintiff lacked a good faith basis for his motion to amend where he "deliberately chose" to wait an "unreasonably long" time to seek leave to amend for tactical reasons); *see also Kanyi v. United States*, No. 99 Civ. 5851 (ILG), 2002 WL 1471648, at *2 (E.D.N.Y. May 3, 2002) (denying leave to amend where plaintiff "offer[ed] no explanation why he waited over two years to first allege such claims"); *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 166 (S.D.N.Y. 1990) (denying leave to amend where plaintiff's motion was not made on the basis of "newly discovered facts" and plaintiff waited until six months after the close of discovery to move to amend his complaint). Plaintiffs' motions fail under this standard.

*First*, plaintiffs offer no plausible explanation for their over four-year delay in seeking to add to their existing *pari passu* claims, which target only Exchange Bonds, new *pari passu* claims applying to "*all* External Indebtedness."[10] Pls. Br. at 2 (acknowledging that External Indebtedness claim "could have" been brought along with existing *pari passu* claims); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (two years and nine months constituted an undue delay); *Cresswell*, 922 F.2d at 72 (17 month delay was undue). Plaintiffs' only stated rationale for their inordinate delay – that "[t]hey believed and hoped that the scope of the original injunction would have been sufficient to lead to compliance or at least negotiations by the Republic," Pls. Br. at 2 – is precisely the kind of tactical reason that *supports* the denial

---

[10] Aurelius, Blue Angel and NML all brought motions to amend their complaints to add *pari passu* claims in the above-captioned actions in either 2010 or 2011, and Olifant's original 2010 complaint in the above-captioned action included claims for *pari passu* relief. The only exception is NML's action No. 14 Civ. 8988, which was commenced in 2014.

of their motion.  It also makes clear that plaintiffs never sought the Injunctions to vindicate their purported contract rights, but as a means of getting their judgments paid with immune sovereign property.

Plaintiffs, for strategic reasons, purported to "narrowly tailor" the scope of the contractual and injunctive relief they sought in their original motions because they knew that a broader reading of the *pari passu* clause was unreasonable and unworkable, and that broader "equitable" relief would be more substantially destructive to the Republic and other public and private sector creditors, thus reducing their likelihood of success.  Specifically, in response to the Republic's warnings that their *pari passu* theory and the Injunctions could negatively impact Republic debt other than the Exchange Bonds, such as its then-unsatisfied Paris Club debt,[11] and other sovereign debt restructurings, plaintiffs assured the Court of Appeals, repeatedly, that this Court's reading of the *pari passu* clause was limited and that they were *only* seeking to enjoin payment to the Exchange Bondholders.  *See* April 17 NML Br. at 75 (characterizing the district court's injunctions as narrow); *see also NML I*, 699 F.3d at 260 ("We are not called upon to decide whether policies favoring preferential payments to multilateral organizations like the IMF would breach *pari passu* clauses like the one at issue here.  Indeed, plaintiffs . . . . contend that 'a sovereign's de jure or de facto policy [of subordinating] obligations to commercial unsecured creditors beneath obligations to multilateral institutions like the IMF would not violate the Equal Treatment Provision.'"); *id.* at 4-5 ("Argentina similarly argues that the order will 'imperil payments to lenders of last resort' like the IMF.  But the order only requires Argentina to satisfy

---

[11] Plaintiffs are indeed judicially estopped from arguing that payments on the Republic's debt to the Paris Club or the IMF should be enjoined.  *See Young v. U.S. Dept. of Justice*, 882 F.2d 633, 639 (2d Cir. 1989); *supra* 13.

its obligations to Appellees to the same extent it satisfies its obligations under the Exchange

Bonds.  It thus does not in any way affect, much less imperil, obligations to multilaterals.").

Now, however, after assuring the Second Circuit that their requested *pari passu*

relief was reasonable due to its limited scope, plaintiffs have reversed course in their motions

here and seek to invoke the very same unworkable *pari passu* reading that they previously

abandoned, notwithstanding that they could have raised it almost five years ago when they first

brought their *pari passu* claims.  Pls. Ex. 1 ¶ 101 (claiming that "*[a]ny* payment of External

Indebtedness where the Republic of Argentina does not also make a ratable payment at the same

time to plaintiffs constitutes a violation of the Equal Treatment Provision") (emphasis added);

*Oneida Indian Nation of N.Y. State v. Cnty. of Oneida, N.Y.*, 199 F.R.D. 61, 81 (N.D.N.Y. 2000)

("the primary basis" for the court's finding of bad faith was the fact that plaintiffs "steadfastly

maintained" a certain position throughout a lengthy litigation but then "completely abandon[ed]"

that position and took a contrary tack in their motion to amend).  Plaintiffs' actions here thus

exemplify undue delay and bad faith under Rule 15, and warrant the denial of their motions.  *See*

*Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp)*, 752 F.2d 1334, 1338 (9th Cir.

1984) (leave to amend denied where moving party knew facts from the outset but, for tactical

reasons, delayed raising certain theories until after those facts had been fully litigated on a

different theory; plaintiffs may not use Rule 15 to assert "seriatim claims over the same issue");

*Oneida Indian Nation of New York State*, 199 F.R.D. at 80 ("A finding that a party is seeking

leave to amend solely to gain a tactical advantage . . . supports a finding that such an amendment

is made in bad faith.").

*Second*, plaintiffs similarly fail to adequately explain their delay with respect to

their BONAR 24 *pari passu* claims, which for the same tactical reasons they elected not to bring

in April 2014 after the issuance of BONAR 24's to Repsol, or in December 2014 after the first BONAR 24 local auction.  Plaintiffs again cite "hope[]" of a settlement as the reason they failed to amend their complaints to add the BONAR 24 claims in April or December 2014.  *See* Pls. Br. at 19 (asserting that plaintiffs did not add a BONAR 24 claim in December 2014 because they "hoped that Argentina might negotiate in good faith after the RUFO clause expired on December 31, 2014").  But, as noted above, this purported strategic excuse is legally insufficient to support a motion to amend.  *Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y Steakhouse of Tampa, Inc.*, No. 11 Civ. 1456 (THK), 2011 WL 6034481, at *8 (S.D.N.Y. Dec. 5, 2011) (waiting until "settlement proved futile" to seek to amend does not constitute good cause).  The Court should reject plaintiffs' motions and put an end to their campaign of harassment, which has targeted not only the Republic, but also the participants in the BONAR 24 offerings, who the Aurelius plaintiffs both threatened to sue and purported to subject to document retention requirements in their April 22, 2015 press release.  *See* Aurelius Apr. 22 Press Release (Ex. B).

　　　　　*Third*, plaintiffs are wrong that their delay and bad faith are excusable because the Republic should have expected their proposed new claims and would not suffer any prejudice from the relief they request.  *See* Pls. Br. at 17-20.  As noted above, plaintiffs have repeatedly insisted for the past four-plus years that the *pari passu* relief they sought was limited to the Exchange Bonds, and that assurance was adopted by the Second Circuit in its opinions affirming the Injunctions.   Neither the Republic, nor the courts, had any reason to believe that plaintiffs would later return, as they do here, only to ask for the very same overbroad relief that they previously insisted they did not seek.  Moreover, granting plaintiffs' belated, "surprise" demands would clearly prejudice the Republic.  It would both burden the Republic with additional, plainly futile, claims to litigate, and also threaten the Republic's ability to issue domestic debt without

21

the cloud of plaintiffs' baseless claims hanging over it.  Plaintiffs' only contention to the contrary – that any blame for these burdens would fall on the Republic, Pls. Br. at 18 – rings hollow, as it is plaintiffs, and not the Republic, who insist on this further, unwarranted "relief."

Plaintiffs are also incorrect to assert that their otherwise defective amendments should be adopted due to considerations of judicial economy.  Plaintiffs ask the Court to grant their motions because, if they are not granted, plaintiffs would simply commence new actions.  Pls. Br. at 18.  But plaintiffs' threat to file a torrent of new, tardy actions that fail under Rule 12(b)(6) only shows that any alleged inefficiency would be caused by plaintiffs, not the Republic.  Regardless, judicial economy cannot override the legal principles set forth above, which independently render plaintiffs' motions legally deficient.  *Yaba v. Cadwalader, Wickersham & Taft*, 931 F. Supp. 271, 275 (S.D.N.Y. 1996) (declining to exercise jurisdiction over state law claims already deemed futile in the interest of "judicial economy" or "convenience"); *see also Alzheimer's Inst. of America v. Elan Corp. PLC*, 274 F.R.D. 272, 278 (N.D. Cal. 2011) (denying motion to amend because, although some judicial economy might be served by granting amendment, judicial economy consideration was outweighed by more important concerns such as delay).  As courts have noted in the context of joinder, where there is already a risk of multiplicity of litigation (or in this case the reality of multiplicity of litigation), the judicial economy factor is "neutral" at best, and thus cannot save plaintiffs' otherwise improper motions here.  *Sims v. Electrolux Home Prods., Inc.*, No. 13 Civ. 0625 (GTS) (DEP), 2014 WL 4828151, at \*7 (N.D.N.Y. Sept. 29, 2014).

**CONCLUSION**

For the foregoing reasons, plaintiffs' motions for leave to amend and supplement their complaints should be denied.

Dated: New York, New York
      May 29, 2015

                      Respectfully submitted,

                      CLEARY GOTTLIEB STEEN & HAMILTON LLP

                      By: _____
                          Jonathan I. Blackman (jblackman@cgsh.com)
                          Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

                      One Liberty Plaza
                      New York, New York 10006
                      (212) 225-2000
                      Attorneys for the Republic of Argentina

Of Counsel:
Michael M. Brennan
Elizabeth M. Hanly