UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
NML CAPITAL, LTD.,                      : 08 Civ. 6978 (TPG)
                                        : 09 Civ. 1707 (TPG)
                 Plaintiff,             : 09 Civ. 1708 (TPG)
        vs.                             :
                                        :
THE REPUBLIC OF ARGENTINA,              :
                                        :
                 Defendant.             :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
AURELIUS CAPITAL MASTER, LTD. and       : 09 Civ. 8757 (TPG)
ACP MASTER, LTD.,                       : 09 Civ. 10620 (TPG)
                                        :
                 Plaintiffs,            :
                                        :
        vs.                             :
                                        :
THE REPUBLIC OF ARGENTINA,              :
                                        :
                 Defendant.             :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
AURELIUS OPPORTUNITIES FUND II, LLC     : 10 Civ. 1602 (TPG)
and AURELIUS CAPITAL MASTER, LTD.,      : 10 Civ. 3507 (TPG)
                                        :
                 Plaintiffs,            :
                                        :
        vs.                             :
                                        :
THE REPUBLIC OF ARGENTINA,              :
                                        :
                 Defendant.             :
                                        : (captions continued on next page)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**NON-PARTY JPMORGAN'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT OF
JPMORGAN'S CROSS-MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
           :

AURELIUS CAPITAL MASTER, LTD. and   :  10 Civ. 3970 (TPG)
AURELIUS OPPORTUNITIES FUND II, LLC,  :  10 Civ. 8339 (TPG)
           :

         Plaintiffs,    :
           :

      vs.        :
           :

THE REPUBLIC OF ARGENTINA,    :
           :

         Defendant.   :
           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
           :

BLUE ANGEL CAPITAL I LLC,    :  10 Civ. 4101 (TPG)
           :  10 Civ. 4782 (TPG)
         Plaintiff,    :
           :

      vs.        :
           :

THE REPUBLIC OF ARGENTINA,    :
           :

         Defendant.   :
           :
           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
           :

OLIFANT FUND, LTD.,       :  10 Civ. 9587 (TPG)
           :

         Plaintiff,    :
           :

      vs.        :
           :

THE REPUBLIC OF ARGENTINA,    :
           :

         Defendant.   :
           :  (captions continued on next page)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
PABLO ALBERTO VARELA, et al.,                     :  10 Civ. 5338 (TPG)
                                                  :
                        Plaintiff,                :
                                                  :
            vs.                                   :
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT .................................................................................1

FACTS RELEVANT TO THE MOTIONS...............................................................3

    A.    The Discovery Sought by Plaintiffs...........................................................3

    B.    Plaintiffs' Decision to Compel Discovery from JPMorgan
            Rather than the Republic...........................................................................3

    C.    Discovery That JPMorgan Has Provided and Agreed to Provide.............5

         1.    The Repsol Transaction .................................................................5

         2.    The December 2014 Auction ..........................................................7

         3.    The Suspended February 2015 Transaction....................................8

         4.    The April 2015 Auction .................................................................9

ARGUMENT.............................................................................................................11

POINT I

PLAINTIFFS' DEMANDS FOR ADDITIONAL DISCOVERY FROM JPMORGAN
SHOULD BE DENIED BECAUSE THE INFORMATION THEY SEEK IS
DUPLICATIVE AND CUMULATIVE AND THE MAY 5 SUBPOENA IS
UNREASONABLY BURDENSOME .......................................................................11

    A.    The Applicable Law..................................................................................11

    B.    Plaintiffs' Demands for Additional Discovery Should Be Rejected
            Because They Are Overbroad and Seek Cumulative Information...........12

    C.    Plaintiffs' Demands for Additional Discovery Should Be Denied
            Because Plaintiffs Have Yet to Exhaust Their Party Discovery
            Options Against the Republic ...................................................................15

    D.    Plaintiffs' Demands for Additional Discovery Should Be Denied Because
            They Are Unduly Burdensome and Expensive........................................18

POINT II

A PROTECTIVE ORDER ALLOWING JPMORGAN TO DESIGNATE
DOCUMENTS AS "ATTORNEYS' EYES ONLY" IS NECESSARY
TO SAFEGUARD HIGHLY CONFIDENTIAL BUSINESS INFORMATION...........................19

CONCLUSION.............................................................................................................................23

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                    <u>Page</u>

*Asch/Grossbardt Inc. v. Asher Jewelry Co.*,
    No. 02 Civ. 5914(SAS), 2003 WL 660833 (S.D.N.Y. Feb. 28, 2003) ..................................... 20

*Belk v. Smith*,
    No. 1:10CV724, 2014 WL 4986678 (M.D.N.C. Oct. 6, 2014) ................................................ 15

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) ........................................................................................ 12

*Dial Corp. v. News Corp.*,
    No. 13CV6802, 2015 WL 3778533 (S.D.N.Y. May 19, 2015) ............................................... 15

*Haworth, Inc. v. Herman Miller, Inc.*,
    998 F.2d 975 (Fed. Cir. 1993).......................................................................................... 15

*In re Biovail Corp. Sec. Litig.*,
    247 F.R.D. 72 (S.D.N.Y. 2007) ....................................................................................... 12

*In re City of New York*,
    607 F.3d 923 (2d Cir. 2010).................................................................................... 2, 20

*Med. Components, Inc. v. Classic Med., Inc.*,
    210 F.R.D. 175 (M.D.N.C. 2002) ..................................................................................... 16

*Rembrandt Patent Innovations v. Apple, Inc.*,
    No. 1:15-CV-438-RP, 2015 WL 4393581 (W.D. Tex. July 15, 2015)..................................... 16

*Robinson Steel Co. v. Caterpillar, Inc.*,
    No. 2:10-CV-438-JTM-PRC, 2012 WL 5903769 (N.D. Ind. Nov. 21, 2012)........................... 16

*Solarex Corp. v. Arco Solar, Inc.*,
    121 F.R.D. 163 (E.D.N.Y. 1988) ..................................................................................... 12

*Soto v. Castlerock Farming & Transport, Inc.*,
    No. 1:09-cv-00701 AWI, 2011 WL 2680839 (E.D. Cal. July 8, 2011).................................... 16

*Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*,
    No. 93 CIV. 6350 (PKL), 1994 WL 177795 (S.D.N.Y. May 5, 1994) .................................... 21

*Tucker v. Am. Int'l Grp., Inc.*,
    281 F.R.D. 85 (D. Conn. 2012)................................................................. 11, 12, 14, 16, 18, 19

*Vesta Corset Co. v. Carmen Founds., Inc.*,
   No. 97 CIV. 5139 (WHP), 1999 WL 13257 (S.D.N.Y. Jan. 13, 1999) ............................. 20, 21

<u>Statutes & Rules</u>

Fed. R. Civ. P. 26(b)(2)(C)(i) ................................................................................... 12, 15

Fed. R. Civ. P. 26 (b)(2)(C)(ii) ...................................................................................... 11

Fed. R. Civ. P. 26 (b)(2)(C)(iii) ..................................................................................... 11

Fed. R. Civ. P. 26(c) .................................................................................................... 20

Fed. R. Civ. P. 37(b) .................................................................................................. 4, 5

Fed. R. Civ. P. 37(b)(2) ................................................................................................ 17

Fed. R. Civ. P. 45(d)(1).......................................................................................... passim

Non-parties JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan Securities LLC (collectively, "JPMorgan") submit this memorandum of law in opposition to plaintiffs' motion to compel production of all documents responsive to their May 5, 2015 Subpoena (the "May 5 Subpoena"), and in support of JPMorgan's cross-motion to quash that Subpoena to the extent that it demands documents beyond those that JPMorgan already agreed to provide and for a protective order.

## PRELIMINARY STATEMENT

Plaintiffs move to compel production of documents demanded by the May 5 Subpoena—the *eighth* subpoena served on JPMorgan by one or more of them since April 2013. They purport to be unsatisfied with the extensive discovery—documentary and testimonial—that JPMorgan already has provided in response to their multiple subpoenas. They say that they need "all documents" demanded by the May 5 Subpoena in order to establish their claim that the BONAR 2024 Bonds are "External Indebtedness" subject to the *pari passu* clause of the Fiscal Agency Agreement ("FAA"). And they claim that the discovery JPMorgan has provided and has agreed to provide is insufficient to enable them to develop their theory that the BONAR 2024 Bonds were offered to investors throughout the world. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Deutsche Bank, JPMorgan and BBVA to Produce Documents Concerning the BONAR 2024 Bonds ("Pltfs.' Moving Mem.") at 2-3, 14.

Not so. To the extent that JPMorgan had a role in any of the four BONAR 2024 Bonds transactions that are the subject of the Second Amended and Supplemental Complaint ("SAC"),[1] JPMorgan either has provided or agreed to provide information in its possession that plaintiffs claim to need to prove their case, including, specifically, documents and information showing how and where the BONAR 2024 Bonds were marketed and sold. JPMorgan has only sought—

---

[1] Citations to the SAC are to Docket No. 08 Civ. 6978, ECF No. 807.

through good-faith negotiations unilaterally terminated by plaintiffs—to limit the burden imposed upon it by plaintiffs' unreasonable demands for documents that are cumulative of evidence JPMorgan has already provided or agreed to provide, or that plaintiffs already have or should properly seek from other sources.  In defiance of Fed. R. Civ. P. 45(d)(1), plaintiffs decline to accept any limitation on their claimed right to unfettered discovery from a non-party.

This Court should impose a limit, because not only is the additional information that plaintiffs seek cumulative, but their demand for "all" documents—no matter how many custodians or jurisdictions are involved, no matter how duplicative or immaterial the information, and no matter what the cost to JPMorgan in attorneys' fees and otherwise—violates the letter and the spirit of Rule 45(d)(1), which requires plaintiffs and their counsel to take reasonable steps to avoid imposing undue burden and expense on non-parties.  JPMorgan already has produced hundreds of pages of documents responsive to plaintiffs' barrage of subpoenas; it has agreed to produce more; and it has produced a managing director for a deposition that lasted approximately six hours, at which plaintiffs asked wide-ranging questions about the BONAR 2024 Bonds.  It is time for the Court to say "enough."

Furthermore, because plaintiffs have demanded highly confidential information, including documents that reveal client information and pricing, the Court should either (i) permit JPMorgan to produce in redacted form the documents it has agreed to produce or that it may be directed, or (ii) enter a protective order directing that such information is for "attorneys' eyes only."  As the Second Circuit has recognized, disclosure of highly confidential commercial information on an "attorneys' eyes only" basis is a routine feature of civil litigation.  *In re City of New York*, 607 F.3d 923, 935 (2d Cir. 2010).  To the extent plaintiffs insist upon receiving the documents without redaction, they have no legitimate grounds for opposing such an order.

## FACTS RELEVANT TO THE MOTIONS

### A.  The Discovery Sought by Plaintiffs

In their SAC, plaintiffs seek a declaration that the BONAR 2024 Bonds are External Indebtedness within the meaning of the FAA, as well as an injunction prohibiting the Republic of Argentina (the "Republic") from making principal and interest payments on these Bonds unless a ratable payment is made to them.  SAC ¶ 2.  Plaintiffs' theory of the case, as stated in the SAC and in their brief on their motion to compel, is that the BONAR 2024 Bonds are External Indebtedness because they "were offered and sold throughout the world."  Pltfs.' Moving Mem. at 2; SAC ¶ 95.  The Republic takes a contrary view, they say, maintaining that the BONAR 2024 Bonds are not External Indebtedness, but rather "Domestic Foreign Currency Indebtedness" ("DFCI"), because they were "'offered exclusively' in Argentina."  Pltfs.' Moving Mem. at 2.

Plaintiffs say that in order to prove that the BONAR 2024 Bonds are External Indebtedness, they must obtain information "concerning how, where and to whom the Republic and the Banks marketed and sold the Bonds outside of Argentina."  *Id.* at 3.  They further say that, because the Republic makes the "specious assertion that the Banks' activities were unrelated to the Republic's offers," they need the banks to disclose their communications with the Republic and unspecified "third-party allies" of the Republic.  *Id.*

### B.  Plaintiffs' Decision to Compel Discovery from JPMorgan Rather than the Republic

Notably, plaintiffs do *not* say that they asked the *Republic* to provide any of this information, or that the Republic has declined to do so, or that they have sought relief against the Republic from this Court based on any refusal by the Republic to provide discovery of the information plaintiffs now seek from JPMorgan.  Rather, plaintiffs make the vague assertion that

discovery from "the Banks" is important because the Republic has a "history" of failing to comply with its discovery obligations. *Id.* at 3.

Of course, as plaintiffs themselves note, *plaintiffs* have a history of asking the Court to grant remedies against the Republic for such recalcitrance, and the Court has a history of granting them. *Id.* As plaintiffs explain, just this past August, the Court sanctioned the Republic for failing to provide discovery about its assets by finding facts adverse to it, i.e., that the Republic's property in the United States, except diplomatic and military property, was used for commercial activity. Pltfs.' Moving Mem. at 3 n.4; Declaration of Andrea Likwornik Weiss dated October 23, 2015 ("Weiss Decl.") Ex. 1 (Order dated August 13, 2015 (No. 08 Civ. 6978, ECF No. 814)). The Court imposed that remedy after plaintiffs vigorously argued that, pursuant to Fed. R. Civ. P. 37(b), they were entitled to a sanction "that prohibits Argentina from opposing designated claims or introducing evidence with respect to the matters that were covered by the discovery that we sought." Weiss Decl. Ex. 2 (August 12, 2015 Hearing Tr. at 13: 11-13). Addressing the Court then, plaintiffs' counsel recited some of the litany of remedies provided by Rule 37:

> We are helped, your Honor, by federal rule 37(b), which is captioned failure to comply with court order which sets out the sanctions available when a party fails to obey an order to provide discovery. *Id.* 12: 7-10.
>
> …
>
> They may include the following and then there is little i: Directing that matters embraced in the order be taken as established for purposes of the action . . . . *Id.* 12: 22-25.
>
> . . .
>
> Little ii says that the sanctions may include prohibiting the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters as evidence. *Id.* 13: 7-10.

4

Although clearly well-versed in Rule 37(b), plaintiffs have elected not to pursue that course with respect to the BONAR 2024 Bonds.  Instead, in total disregard of their obligations under Fed. R. Civ. P. 45(d)(1), they ask the Court to burden a non-party by requiring JPMorgan to search for and produce every single document on every single BONAR 2024 Bonds issuance, regardless of how minimal or non-existent a role JPMorgan played.

### C.  Discovery That JPMorgan Has Provided and Agreed to Provide

Plaintiffs, through the May 5 Subpoena, seek discovery regarding the following transactions:

- A May 2014 issuance of BONAR 2024 Bonds to Repsol, S.A. ("Repsol"), in settlement of Repsol's claims against the Republic (the "Repsol Transaction").  Pltfs.' Moving Mem. at 5-6, 12.

- A December 2014 auction of the BONAR 2024 Bonds (the "December 2014 Auction"), in which JPMorgan placed a single order for a client.  *Id.* at 6, 12.

- A contemplated but never executed private placement of the BONAR 2024 Bonds in February 2015 (the "Suspended February 2015 Transaction").  *Id.* at 6-7, 13.

- An April 2015 auction of the BONAR 2024 Bonds (the "April 2015 Auction"), *id.* at 7, 13, in which JPMorgan did not participate at all.

Following is a summary of the discovery that JPMorgan already has provided with respect to these four transactions:

### 1.  The Repsol Transaction

Plaintiffs argue that JPMorgan's discovery regarding the Repsol Transaction is insufficient because JPMorgan has only agreed to provide its agreement with Repsol (the "Repsol Agreement") and "unspecified transaction" data, and has declined to produce "communications" that show "where it offered the bonds, the location of the offerees, and who purchased the bonds."  Pltfs.' Moving Mem. at 12.  Their argument is misleading, because it omits to state that the documents that JPMorgan has produced, and has agreed to produce, do in

fact show where the Bonds were offered, the location of the offerees, and the identity of the purchasers of the Bonds.

        In response to an earlier subpoena served by plaintiffs dated February 9, 2015 (the "February 9 Subpoena"), JPMorgan produced ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████   ████████████████████████

        In response to the May 5 Subpoena, ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████

        JPMorgan has further agreed to *provide the actual trade tickets along with location information to show where the Bonds were resold*.  Farris Decl. Ex. 37 (September 11, 2015 Letter from Andrea Likwornik Weiss to Daniel Rapport (the "September 11 Letter") at 1-2). Plaintiffs say that the BONAR 2024 Bonds are External Indebtedness because "they were offered and sold to investors throughout the world."  Pltfs.' Mem. at 2.  The trade tickets,

accompanied by location information, will show plaintiffs exactly where the Bonds were sold

and to whom.[2]

### 2. The December 2014 Auction

Plaintiffs complain that JPMorgan has agreed to produce only a trade ticket for a

transaction that it handled for a client in connection with the December 2014 Auction, and has

objected to identifying the purchaser and providing communications.  Plaintiffs omit to inform

the Court, however, that they deposed JPMorgan in February of this year, and obtained

testimony that ███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████     Furthermore, JPMorgan subsequently told plaintiffs that, in fact, JPMorgan had only

placed a single order in the December 2014 Auction for a single client, and, in response to

plaintiffs' request, also confirmed, based on a reasonable inquiry, that JPMorgan did not

communicate with the Republic about this Auction.  Farris Decl. Ex. 37 (July 23 email at 2;

August 19 email).  Plaintiffs' statement that JPMorgan does not deny having had discussions

with the Republic about the December 2014 Auction is false.  Pltfs.' Moving Mem. at 16; Farris

Decl. Ex. 37 (July 23 email at 2).

---

[2] JPMorgan originally offered to provide the trade tickets in redacted form, omitting client-identifying and pricing information, because, based on plaintiffs' complaint, they need only the location where the Bonds were sold, and not the identity of the purchaser.  Farris Decl. Ex. 37 (August 19, 2015 email from Andrea L. Weiss to Mark G. Farris (the "August 19 email")).  JPMorgan explained to plaintiffs that client-identifying information was highly confidential and proprietary, and expressed concern about whether plaintiffs would respect this confidentiality in light of accusations by others that plaintiffs had violated the protective orders in this case.  *Id.* (July 23, 2015 email from Andrea L. Weiss to Mark G. Farris (the "July 23 email")).  When plaintiffs insisted that they must have the names, JPMorgan, in an effort to resolve the matter, agreed to provide them, subject to an attorneys' eyes only protective order.  *Id.* (September 11 Letter at 2).  Plaintiffs did not respond, but as is evident from their motion, they reject such a protective order.

### 3.   The Suspended February 2015 Transaction

Plaintiffs complain that JPMorgan's discovery with respect to the Suspended February 2015 Transaction is inadequate because they have not been given "all documents" relating to it. Pltfs.' Moving Mem. at 17.  But, they *have* been given documents relevant to the issues they say they need to prove.  In response to the February 9 Subpoena, JPMorgan produced 896 pages of documents describing this transaction, which never even happened, *and* produced a managing director for a deposition that spanned about six hours, during which plaintiffs questioned him ███

████████████████████████████████████████████████████████████████████

█████████████████████████ ██████████████████████████████████████████

██████████████████████████████████████████████████

The discovery that JPMorgan provided in response to the February 9 Subpoena ████████

████████████████████████████████████████████████████████████████████

████████████ █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[3] Plaintiffs' gratuitous assertion that JPMorgan had to be "compelled" to provide this discovery, which was the subject of their February 9 Subpoena, Pltfs.' Moving Mem. at 7, is just as disingenuous.  The undisputed record shows that plaintiffs and JPMorgan had been in discussions regarding the scope of the February 9 Subpoena for documents and that plaintiffs had adjourned the deposition they requested without date on February 24.  Farris Decl. Ex. 40 at 4.  Less than 24 hours later, at 4 p.m. on February 25, and without any further discussion, plaintiffs announced that they would be before this Court within the hour (without providing JPMorgan or the Court any papers in advance) to compel compliance with the February 9 Subpoena.  *Id.* at 4-5.  Plaintiffs' stated reason for proceeding this way was that they believed the transaction was imminent and they emergently needed to ascertain the flow of funds in order to attach them.  *Id.* at 3-4.  This was a misrepresentation to the Court of plaintiffs' true intention: during the six-hour deposition they took, plaintiffs posed questions to the witness about ███████████ ███

█████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ ████

████████████████████████████████████████████████████████████████████

██████████████████████

[4] "Marketed" is plaintiffs' term. ██████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

        ███████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████

        ███████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

**4.  The April 2015 Auction**

JPMorgan was not a participant in the April 2015 Auction, and JPMorgan has so informed plaintiffs many times.  Farris Decl. Ex. 37 (July 23 email at 2; September 11 Letter at 2).  Plaintiffs nevertheless demand that JPMorgan be ordered to search unspecified and unlimited

files to see if it possibly has any information about it.  Pltfs.' Moving Mem. at 17.  Rather than

incur the cost of searching for a needle in a haystack, on the off chance that there is a stray

communication, JPMorgan has asked plaintiffs to seek documents regarding this Auction from

the banks that did participate rather than from JPMorgan.  Farris Decl. Ex. 37 (July 23 email). As

is clear from plaintiffs' motion, they rejected that option, even though those financial institutions

have agreed to produce documents.  Farris Decl. Exs. 36, 38.

Instead, to justify their demand for a broad document review by JPMorgan regarding the

April 2015 Auction, plaintiffs imply that the Auction was somehow a continuation of the

Suspended February Transaction.  They go so far as to state that the Republic was somehow

assisted in the Auction through "continuing sales efforts by JPMorgan [Redacted]."  Pltfs.'

Moving Mem. at 7, 17.  Not surprisingly, plaintiffs cite no evidence for their claim.  To the

contrary, the documents upon which plaintiffs rely *contradict* their claim of involvement by

JPMorgan.  These documents refer to participation by Deutsche Bank and BBVA, not JPMorgan.

Farris Decl. Ex. 21; Republic's Answer to SAC, at ¶ 101 (identifying Deutsche Bank S.A. and

BBVA Banco Francés S.A. ).

Undeterred, and in the proverbial act of "grasping at straws," plaintiffs insinuate that

JPMorgan must have had something to do with the April 2015 Auction ███████████

████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████    That plaintiffs have resorted to excising language from a document to twist its meaning shows just how tenuous is their factual basis for discovery from JPMorgan about the April 2015 Auction.

## ARGUMENT

## POINT I

### PLAINTIFFS' DEMANDS FOR ADDITIONAL DISCOVERY FROM JPMORGAN SHOULD BE DENIED BECAUSE THE INFORMATION THEY SEEK IS DUPLICATIVE AND CUMULATIVE AND THE MAY 5 SUBPOENA IS UNREASONABLY BURDENSOME

#### A. The Applicable Law

Plaintiffs argue that the documents they seek are relevant and so JPMorgan must be ordered to produce them.  Pltfs.' Moving Mem. at 15.  As is their *modus operandi*, plaintiffs excise from the equation the duty imposed *on them* by Rule 45 not to place an undue burden on a non-party, and the duty of the Court to enforce plaintiffs' compliance.  Fed. R. Civ. P. 45(d)(1).

It is settled law that, *in every case*, the burden on the party from which the discovery is sought *must* be balanced against the need for information.  *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) (Haight, *J.*).  Rule 26(b)(2)(C)(i) requires courts to "limit the frequency or extent of discovery" that is "unreasonably cumulative or duplicative," or that "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Courts likewise must limit discovery where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," Fed. R. Civ. P. 26 (b)(2)(C)(ii), or "where the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26 (b)(2)(C)(iii).

The burden half of the equation takes on considerable additional weight when discovery is sought from a non-party.  "Within this Circuit, courts have held nonparty status to be a

'significant' factor in determining whether discovery is unduly burdensome." *Tucker*, 281

F.R.D. at 92 (quoting *Solarex Corp. v. Arco Solar, Inc*., 121 F.R.D. 163, 179 (E.D.N.Y. 1988)).

Thus, in performing the need-burden balance, "courts have considered the fact that discovery is

being sought *from a third or non*-party, which weighs against permitting discovery." *Tucker*,

281 F.R.D. at 92 (collecting cases) (emphasis in original); *see also, e.g.*, *In re Biovail Corp. Sec.

Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (where discovery is sought from non-parties, "the

Court must weigh the probative value of the information against the burden of production on said

non-parties"; concluding that "the virtually limitless financial and other information" sought is

"unnecessary and irrelevant" and that "the burden these demands place on the subpoenaed non-

parties and diversion of their staff to provide it far outweighs any probative value of the

information"); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49, 53 (S.D.N.Y. 1996)

(noting that status as non-party witness entitles witness to consideration regarding expenses and

inconvenience, and quashing subpoena where compliance would subject non-party to undue

burden).  That is as it should be:  Rule 45(d)(1) requires that courts protect non-parties from

onerous discovery requests.[5]

## B.  Plaintiffs' Demands for Additional Discovery Should Be Rejected Because They Are Overbroad and Seek Cumulative Information

The May 5 Subpoena, by its terms, demands every single document that JPMorgan has

relating to the BONAR 2024 Bonds between January 1, 2014 and the present.  Farris Decl. Ex. 4

at 14, Request 1 (demanding "All Documents that were originated or otherwise came into Your

possession during the period from January 1, 2014 to the date of Your response to this Subpoena

Concerning any BONAR 2024 Offering . . . .").  Given that plaintiffs say that the documents they

---

[5] Indeed, the Rule provides that a court "must enforce this duty [not to impose undue burden and expense on a non-party] and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."  Fed. R. Civ. P. 45(d)(1).

need to prove their case are:  (1) documents that show where the Bonds were marketed and sold to investors, and (2) communications with the Republic and its unidentified "third-party allies" about the issuance of these Bonds, Pltfs.' Moving Mem. at 3, there is no question that the May 5 Subpoena is overbroad on its face.[6]  Plaintiffs' conduct in serving such a Subpoena, on top of the seven they have previously served, is a blatant violation of Rule 45(d)(1), made worse by their motion to compel, which seeks to enforce the Subpoena in its entirety.  Plaintiffs act as though Rule 45(d)(1) does not apply to them; that is all the more reason for this Court to enforce it by denying their motion to compel.  *Id.*

Even if the Court prunes the May 5 Subpoena to include only the two categories of information that plaintiffs now say they need, the Court should deny plaintiffs' motion to compel because the information they demand in those categories is cumulative of information that JPMorgan already has provided.  As is explained above, *supra* at pp. 5-6, 8-9, JPMorgan already has produced documents and provided testimony ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

---

[6] For example, the May 5 Subpoena demands, among other extraneous matter, documents relating to fees paid to JPMorgan and documents relating to the Boden 2015 Bonds.  Farris Decl. Ex. 4 at 17.

Furthermore, as is clear from plaintiffs' brief, plaintiffs already have the information they claim they need, because they received it from other sources.[7]  They have the Repsol Settlement Agreement and the Repsol Official Notice, Farris Decl. Exs. 6 and 7, which they say prove that "the bonds were offered to investors around the world because, under the terms of the settlement agreement, Argentina's obligation to Repsol would only be satisfied when Repsol transferred the Bonds."  Pltfs.' Moving Mem. at 5.  They also acknowledge that they know that the Bonds cleared through Euroclear "because investors outside Argentina would want the bonds to be clearable through an international clearing system."  *Id.* at 6 (citing Repsol Settlement Agreement at 51).  Additional discovery from a non-party is properly denied "absent a showing that plaintiff either cannot obtain—or in fact *has not* obtained—ample discovery on the essential elements of [its] claim."  *Tucker*, 281 F.R.D. at 96 (emphasis in original).

Notably, plaintiffs do not even attempt to show that they are missing information that they need to prove their case either on summary judgment or at trial.  They merely make the vague assertion that they desire to present a "full record" to the Court.  Pltfs.' Mov. Mem. at 16.  That argument is unavailing because, as much as plaintiffs may wish to have every last document, no matter how tangential to their claim or duplicative of other evidence they already have, Fed. R. Civ. P. 26(b)(2)(C)(i) requires courts to "limit the frequency or extent of discovery" that is "unreasonably cumulative or duplicative."  Here, plaintiffs demand from a non-party evidence that not only is cumulative, but that also is of marginal, if any, relevance: for example, they demand "all" documents relating to the Suspended February 2015 Transaction, which Transaction did not even occur and as to which there is, accordingly, no need for a remedy.  There is no question that plaintiffs' overbroad demands for cumulative and immaterial

---

[7] Plaintiffs have informed JPMorgan that they believe they already have "facts that cannot be disputed" to support their legal position that the Bonar 2024 Bonds are External Indebtedness.  Farris Decl. Ex. 37 (September 1, 2015 Letter from Daniel B. Rapport to Andrea Likwornik Weiss at 2).

information should be denied.  *See Dial Corp. v. News Corp*., No. 13cv6802, 2015 WL 3778533, at *2 (S.D.N.Y. May 19, 2015) (denying discovery on matters of marginal relevance).

### C.  Plaintiffs' Demands for Additional Discovery Should Be Denied Because Plaintiffs Have Yet to Exhaust Their Party Discovery Options Against the Republic

The Court should deny plaintiffs' motion to compel and grant JPMorgan's motion to quash on the additional ground that plaintiffs have failed to exhaust their discovery options as against the Republic in the first instance.  Consistent with the Rules requiring courts to limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2)(C)(i), and requiring courts to "enforce" a party's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena," Fed. R. Civ. P. 45(d)(1), numerous federal courts have barred, limited, or stayed non-party discovery on the ground that discovery imposes undue burdens on non-parties where a party has yet to make full use of its discovery options vis-à-vis its party opponent.

For example, in *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993), the appellate court held that the district court did not err in requiring a party "to seek discovery from its party opponent before burdening the nonparty."  In *Soto v. Castlerock Farming & Transport, Inc.*, No. 1:09-cv-00701 AWI, 2011 WL 2680839, at *9 (E.D. Cal. July 8, 2011), the court stated:  "In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests. . . .  Consequently, where plaintiffs have not shown they attempted to obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party."  Similarly, in *Belk v. Smith*, No. 1:10CV724, 2014 WL 4986678, at *2 (M.D.N.C. Oct. 6, 2014), the court concluded that "[r]equiring Defendant . . . to pursue such

alternatives [i.e., party discovery] serves the recognized purpose of protecting non-parties from unnecessary discovery burdens. . . .  In other words, prudence dictates that Defendant . . . should seek the relevant information from Plaintiff before asking this Court to order [non-party] to turn over the requested records."  In *Robinson Steel Co. v. Caterpillar, Inc.*, No. 2:10-CV-438-JTM-PRC, 2012 WL 5903769, at *3 (N.D. Ind. Nov. 21, 2012), the court quashed a subpoena as unduly burdensome where it "appear[ed] to the Court that much of the information [plaintiff] is seeking . . . could have been obtained through party discovery . . . and that [plaintiff] did not attempt to obtain the information by discovery in the action before issuing the subpoenas." Likewise, in *Rembrandt Patent Innovations v. Apple, Inc.*, No. 1:15-CV-438-RP, 2015 WL 4393581, at *2 (W.D. Tex. July 15, 2015), where it "seem[ed] reasonable to assume" that information sought would be available from opposing party, "[t]he Court [found] that until and unless Plaintiffs can establish they are unable to obtain the requested information from the Defendant, subpoenaing the information from [non-party] creates an undue burden that is not outweighed by Plaintiffs' need for the information."

Moreover, courts in this Circuit have recognized that "'[t]he current generally prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties.'" *Tucker*, 281 F.R.D. at 92 (quoting *Med. Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002)).

 Plaintiffs have not shown that they have sought from the Republic the information they now demand from JPMorgan, notwithstanding the fact that the Republic undoubtedly has information relevant to the parties' claims and defenses, and certainly about its own role in the issuances of the BONAR 2024 Bonds.  Indeed, when JPMorgan inquired, as part of the "meet

16

and confer" process, whether plaintiffs had sought this information from the Republic, plaintiffs'

answer was resounding silence, followed by this motion to compel.  Farris Decl. Ex. 37

(September 18, 2015 email from Andrea LikwornikWeiss to Mark G. Farris (the "September 18

email")); Weiss Decl. ¶ 9.  Plaintiffs attempt to justify initiating litigation against a non-party

based on the "Republic's history in this litigation of failing to comply with its discovery

obligations."  Pltfs.' Mov. Mem. at 3.  Mere reference to the Republic's prior discovery

resistance on different subject matters, however, does not establish Plaintiffs' current inability to

obtain the information at issue from the Republic.

Moreover, even if the Republic refused to provide the information, plaintiffs have

remedies other than dragging a non-party into court to compel it to do what a party will not.  The

record shows that plaintiffs have not hesitated to seek sanctions against the Republic when

plaintiffs' goal is to develop evidence on an issue.  In August of this year plaintiffs did precisely

that, seeking, and obtaining, from this Court an adverse factual finding against the Republic

based on its failure to produce documents.  Weiss Decl. Exs. 2, 1 (Order dated August 13, 2015

(No. 08 Civ. 6978, ECF No. 814)).  They could do precisely the same now:  file a motion to

compel the Republic, rather than non-parties, to produce discovery about the Republic's role,

conduct, and intent in issuing the BONAR 2024 Bonds.  And if the Republic refused to obey a

compulsion order, Rule 37 provides a panoply of remedies (some of which were enumerated by

plaintiffs' counsel at the August 12, 2015 hearing) that would obviate the need for discovery

from anyone, including adverse factual findings, a default judgment, or striking the Republic's

answer.  Fed. R. Civ. P. 37(b)(2).  Pursuit of Rule 37 remedies against a party for its willful

refusal to provide discovery is undoubtedly the fairer course than hauling a non-party into court,

17

particularly where the non-party already has produced hundreds of pages of documents, has agreed to produce more, and has supplied a managing director for a six-hour deposition.

That plaintiffs have elected to pursue JPMorgan in this Court rather than the Republic suggests that, their protests to the contrary notwithstanding, plaintiffs' motive is, indeed, to "harass" and "punish" financial institutions "for doing business with Argentina."  Pltfs.' Moving Mem. at 10 n.8.  The Court should not—indeed under Rules 26 and 45 the Court must not—permit it.

### D.  Plaintiffs' Demands for Additional Discovery Should Be Denied Because They Are Unduly Burdensome and Expensive

The May 5 Subpoena is unduly burdensome.  Plaintiffs ask the Court to order JPMorgan to produce documents "detailing its communications" with every conceivable person or entity that touched a Bonar 2024 Bond issuance—Repsol, the Republic, bond purchasers, prospective bond purchasers, and so on.  Pltfs.' Moving Mem. at 3, 12-13.  They want "*all* documents" relating to the Suspended February 2015 Transaction even though they have been given hundreds of pages of documents and a deponent by JPMorgan to explain that Transaction, which never even happened.  *Id.* at 13.  As is obvious, such an undertaking would be extremely expensive.  JPMorgan spent approximately $140,000 on outside counsel fees alone responding to the February 9 Subpoena, and JPMorgan has spent a total of approximately $300,000 on outside counsel fees responding to all of plaintiffs' subpoenas.  Declaration of Andrew N. Keen dated October 23, 2015 at ¶¶ 3-4.  Conducting the type of email review that plaintiffs now demand likely would compound the already extraordinary expense they have caused JPMorgan.  Since the plaintiffs have ignored their duty to avoid imposing undue burden and expense on JPMorgan, the Court must enforce that duty on its own.  *See Tucker*, 281 F.R.D. at 96; Fed. R. Civ. P. 45(d)(1).

Plaintiffs argue that they have worked "cooperatively with some Subpoena recipients to identify appropriate search parameters—including custodians and search terms" and that they would do so with JPMorgan.  Pltfs.' Mov. Br. at 15.  Neither JPMorgan nor the Court may draw any comfort from plaintiffs' unsworn declaration of "cooperation."  Their demand for "all" documents, no matter how cumulative or marginally relevant, speaks for itself:  plaintiffs know no bounds of reasonableness.

Finally, the May 5 Subpoena raises legitimate confidentiality concerns, not the least of which are Argentine law prohibitions against disclosure that may come into play if JPMorgan is directed to provide documents that may reside only in Argentina, and the attendant risk to JPMorgan Argentina and its employees of complying.  Such concerns are properly weighed on the need-burden scale.  *See Tucker*, 281 F.R.D. at 97 (considering confidentiality issues as part of the burden analysis).  Even if this Court could require such discovery, that does not mean it should do so, particularly where, as here, plaintiffs have not shown either a specific need for the discovery or that, if they have such a need, they cannot obtain it elsewhere.[8]  This is so as a matter of international comity, as well as under the Federal Rules of Civil Procedure.  Plainly, in this circumstance, the potential burden outweighs the benefit, and additional discovery should be denied.

## POINT II

## A PROTECTIVE ORDER ALLOWING JPMORGAN TO DESIGNATE DOCUMENTS AS "ATTORNEYS' EYES ONLY" IS NECESSARY TO SAFEGUARD HIGHLY CONFIDENTIAL BUSINESS INFORMATION

For the reasons stated by BBVA in its brief in opposition to plaintiffs' motion to compel, which JPMorgan adopts, this Court should allow JPMorgan to produce documents showing the

---

[8] JPMorgan joins in, and incorporates by reference insofar as applicable to it, the arguments regarding international comity made by the Deutsche Bank entities (as defined in their memorandum of law) in opposition to plaintiffs' motion.

location of persons and entities to whom it sold the BONAR 2024 Bonds while redacting name and pricing information.  In the alternative, the Court should enter a protective order—or modify existing confidentiality orders in this litigation—authorizing JPMorgan to produce highly confidential and sensitive commercial information on an "attorneys' eyes only" basis, thereby restricting the dissemination of such information to plaintiffs' outside litigation counsel, to any independent consultants or experts retained by such counsel, and to the Court.

Pursuant to Fed. R. Civ. P. 26(c), "any person from whom discovery is sought may move for a protective order . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

Courts in this Circuit routinely issue protective orders allowing parties and non-parties to produce documents containing highly confidential or sensitive business information for "attorneys' eyes only."  *See, e.g.*, *In re City of New York*, 607 F.3d at 935 ("The disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets."); *Asch/Grossbardt Inc. v. Asher Jewelry Co.*, No. 02 Civ. 5914(SAS), 2003 WL 660833, at *3 (S.D.N.Y. Feb. 28, 2003) ("Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." (internal citations omitted)); *Vesta Corset Co. v. Carmen Founds., Inc.*, No. 97 CIV. 5139 (WHP), 1999 WL 13257, at *3 (S.D.N.Y. Jan. 13, 1999) ("Protective orders that limit access to certain documents to counsel and experts are commonly entered in litigation involving trade secrets and

20

other confidential research, development, or commercial information."); *Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*, No. 93 CIV. 6350 (PKL), 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994) (limiting disclosure of documents relating to pricing and market strategies to outside counsel because in-house counsel was sufficiently involved in competitive decision making).

Good cause exists here for the entry of such an order.  The documents that JPMorgan is prepared to produce—as well as certain additional documents plaintiffs ask the Court to compel JPMorgan to produce—will necessarily entail the disclosure of highly confidential business information, including commercially sensitive information regarding client identity and pricing. *See, e.g.*, *Vesta Corset*, 1999 WL 13257, at 2-3 (concluding that "attorneys' eyes only" protective order was appropriate as to confidential "[p]ricing and marketing information"); *Sullivan Mktg.*, 1994 WL 177795, at *1 (granting application for "attorneys' eyes only" protective order as to competitively sensitive, confidential information concerning "pricing and marketing strategies").  Specific and serious injury could obviously result from the disclosure of such information, even under the existing confidentiality orders, which permit disclosure to plaintiffs' clients.  JPMorgan's customers include hedge funds, private equity funds, and other entities and individuals in the bond markets just like plaintiffs.  Unrestricted disclosure of the requested information would give plaintiffs direct access to particularly sensitive information regarding their competitors' participation and pricing strategies in the Argentine bond markets.

As further support for the need for a more restrictive protective order here, JPMorgan reiterates the significant concerns expressed by other non-parties in this litigation regarding plaintiffs' apparent violations of existing confidentiality orders and improper use of the discovery process.  For details, JPMorgan refers the Court to the July 6, 2015 pre-motion discovery conference letter to the Court from counsel for non-parties Deutsche Bank AG – New

York and certain of its affiliates (No. 08 Civ. 6978, ECF No. 797).  An "attorney's eyes only" limitation will substantially alleviate these valid concerns.

　　　　　Finally, plaintiffs have failed to set forth any compelling justification for personal access to JPMorgan's highly confidential information.  JPMorgan's counsel attempted to confer in good faith with plaintiffs' counsel regarding the production of documents on an "attorneys' eyes only" basis, but plaintiffs simply ignored JPMorgan's multiple inquiries as to whether plaintiffs would be willing to accept documents on that basis.  *See, e.g.*, Farris Decl. Ex. 37 (September 11 Letter; September 18 email).  In their motion to compel, plaintiffs contend that an "attorneys' eyes only" limitation would "pose a significant hardship," and they vaguely allude to a "multidisciplinary investigation and analysis" allegedly required for litigating these actions. Pltfs.' Moving Mem. at 20.  But an "attorneys' eyes only" protective order would in no way prevent plaintiffs' outside counsel—who are themselves highly sophisticated and intimately familiar with the factual issues involved in this litigation—from retaining sophisticated independent experts to help analyze or interpret any especially complex or technical issues that may arise in the review of JPMorgan's documents.  As a result, JPMorgan's production of documents on an "attorneys' eyes only" basis will in no way adversely affect plaintiffs' ability to prosecute their claims against the Republic.

　　　　In sum, there is a strong basis and legitimate need here for the issuance of an "attorneys' eyes only" protective order.

## CONCLUSION

For all the foregoing reasons, the Court should deny plaintiffs' motion to compel

production of all documents responsive to the May 5, 2015 Subpoena; grant JPMorgan's motion

to quash that Subpoena to the extent that plaintiffs demand documents beyond those that

JPMorgan has already agreed to provide; and enter an "attorneys' eyes only" protective order.


Dated: New York, New York
      October 23, 2015

                LEVI LUBARSKY FEIGENBAUM & WEISS, LLP

                By: _____

                    Andrea Likwornik Weiss
                    Gregory P. Feit
                655 Avenue of the Americas, 27th Floor
                New York, New York 10017
                Tel.: (212) 308-6100

                *Attorneys for JPMorgan Chase & Co., JPMorgan Chase*
                *Bank, N.A., and J.P. Morgan Securities LLC*

23